DANIEL AZIZI, ESQ., SBN 268995
LIILIUOKALANI MARTIN, ESQ. SBN 292778
MICHAEL JUAREZ-MUNOZ, ESQ SBN 341142
DOWNTOWN L.A. LAW GROUP
910 S. Broadway
Los Angeles, California 90015
Phone: (213) 389-3765
Fax:   (877) 389-2775
Email: Daniel@downtownlalaw.com
Email: Lili@downtownlalaw.com
Email: Michael@downtownlalaw.com
Attorney(s) for Plaintiff: CESAR MADRIGAL

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR MADRIGAL, and individual and on behalf of aggrieved employees<br><br>Plaintiff,<br><br>v.<br><br>SMG EXTOL, LLC, a California limited liability company doing business as DIRECT LINE and SMG EXTOL; DIRECT LINE GLOBAL, LLC., a California limited liability company; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 3:22-cv-07351-RS<br>Hon. Judge Richard Seeborg<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. Richard Seeborg<br>Date: January11, 2024<br>Time: 1:30 pm<br>Dept.: 3<br><br>State Complaint Filed:  August 3, 2022<br>Trial Date:           None Set |

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on January 11, 2024, at 1:30 pm, or as soon thereafter as the matter may be heard in Courtroom 3 of the United States District Court for the Northern District of California, located at 450 Golden Gate

Avenue, San Francisco, California 94102, before the Honorable Richard Seeborg, Plaintiff Cesar Madrigal, as an individual and on behalf of all others similarly situated, will and hereby does move this Court for entry of an Order pursuant to Fed. R. Civ. Proc. 23(e) and 29 U.S.C. § 216(b):

1. Preliminarily certifying under Rule 23(e) of the Federal Rules of Civil Procedure, the proposed Settlement Classes, as (1) the Settlement Classes are so numerous that joinder of all members is practicable; (2) there are questions of law or fact common to the Settlement Classes; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the members of the Settlement Classes; (4) the representative party will fairly and adequately protect the interests of the Settlement Classes; (5) the questions of law or fact common to the members of the Settlement Classes predominate over any questions affecting only individual members; and (6) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy;.

2. Preliminarily appointing Cesar Madrigal as the Class Representative for settlement purposes;

3. Preliminarily appointing Daniel Azizi, Liliuokalani Martin, and Michael Juarez-Munoz of Downtown L.A. Law Group, as Class Counsel for settlement purposes;

4. Preliminary approving the class action settlement based upon the terms set forth in the Class and PAGA Representative Action Settlement Agreement (the "Settlement" or "Settlement Agreement");

5. Appointing ILYM as the third-party settlement administrator for mailing notices and otherwise administering the Settlement;

6. Approving the proposed Class Notice, and directing that it be disseminated to the proposed Settlement Class as provided in the Settlement; and

7. Scheduling a final fairness hearing to consider final approval of the

Settlement, entry of a proposed final judgment, Plaintiff's Motion for Reasonable Attorneys' Fees and Costs, and the Class Representative's Service Award.

This motion is made on the grounds that the proposed Settlement is fair, adequate, and reasonable, and the Class Notice fairly and adequately informs the Class Members of the terms of the proposed Settlement, their potential awards, their rights and responsibilities, and the consequences of the Settlement.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the declaration of Liliuokalani Martin and exhibits attached hereto, the declaration of Plaintiff, and the exhibits attached thereto, the pleadings and other papers filed in this action, and on any further oral or documentary evidence or argument presented at the time of hearing.

Dated:  November 30, 2023                    DOWNTOWN LA LAW GROUP, LLP


By: _____

_____
     Daniel Azizi
     Michael Juarez-Munoz
     Liliuokalani Martin
     Counsel for Plaintiff

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
Case No. 3:22-cv-07351-RS

# TABLE OF CONTENT

I.    INTRODUCTION …………………………………………………....4

II.   FACTUAL SUMMARY………………………………………………8

      A. Plaintiff's Claims and Procedural History…………………………8

III.  THE SETTLEMENT MERITS PRELIMINARY APPROVAL………...9

      A. The Settlement Is Fair, Reasonable, and Adequate…………………9

            1. The Strength of Plaintiff's Case………………………………9
            2. Risk, Expense, and Duration of Further Litigation…………..10

            3. Risk of Maintaining Class Action Status……………………10

            4. The Amount of Settlement is Reasonable and Significant…..10
                  a. Failure to Pay All Minimum and Overtime Wages

                     Based on Failure to Pay for Off-the-Clock Work……10

                  b. Failure to Provide Meal Periods and Rest Breaks…...11

                  c. Failure to Reimburse Necessary Business Expenses...12

                  d. Waiting Time Penalties………………………………12
                  e. Failure to Provide Accurate Itemized Wage

                     Statements…………………………………………13

                  f. PAGA Penalties……………………………………...13

                  g. Total Class-Wide Damages…………………………13
            5. Discovery Completed and the Status of Proceedings………..14

            6. The Experience and Views of Counsel………………………14

      B. The Preliminary Approval Standard Is Met…………………………15

            1. The Settlement is Within the Range of Possible Approval…..15
            2. The Settlement Resulted From Arm's-Length Negotiations…15

            3. The Settlement is Devoid of Obvious Deficiencies…………..16

                  a. Settlement Provides Significant Monetary Recovery..16
                  b. Settlement Formula…………………………………..17

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
Case No. 3:22-cv-07351-RS

c. Enhancement Payment, Attorneys' Fees, and Costs…17

IV.   PREVAILING PARTY IS ENTITLED TO RECOVER REASONABLE

ATTORNEY'S FEES AND COSTS…………………………………...19

V.    THE SETTLEMENT MERITS CERTIFICATION……………………22

A. Rule 23(a)(1) – Numerosity Is Satisfied………………………………22

B. Rule 23(a)(2) – Commonality Is Satisfied…………………………..22

C. Rule 23(a)(3) – Typicality Is Satisfied………………………………22

D. Rule 23(a)(4) – Adequacy Is Satisfied ……………………………...22

E. Rule 23(b)(3) – Predominance Is Satisfied…………………………23

F. The *Bluetooth* Factors Are Satisfied…………………………………24

VI.   THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS.. 24

VII.  CONCLUSION…………………………………………………………25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## TABLE OF AUTHORITIES

2

**Cases**

3    *Amchem v. Windsor*, 521 U.S. 591, 623 (1997)…………………………………23

4    *Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.* (S.D.N.Y. 1979) 480

5    F.Supp. 1195 …………………………………………………………………..21

6    *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1038 (2012)…….11

7    *Briseno v. Henderson*, 998 F.3d 1014, at \*6 (9th Cir. 2021)…………………….24

8    *Cellphone Termination Fee Cases*, 186 Cal. App. 4th at 1394…………………..18

9    *Chavez v. Netflix, Inc*. (2008) 162 Cal.App.4th 43, 66 n.11 ……………………..21

10   *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004)..24

11   *Clark v. Am. Residential Services LLC*, 175 Cal. App. 4th 785, 806 (2009)……...18

12   *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)…………………15

13   *Dunleavy v. Nadler*, 213 F.3d 454 459 (9th Cir. 2000)…………………………...14

14   *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974). ……………………………24

15   *Estrada v. Dr. Pepper/Seven-Up,* Los Angeles County Superior Court Case No.

16   BC262247 (May 2005) …………………………………………………………….21

17   *Gribble v. Cool Transports Inc.*, 2008 U.S. Dist. LEXIS 115560, at \*9 (C.D. Cal.

18   Dec. 15, 2008)…………………………………………………………………………15

19   *Guerrero v. United States Gypsum Co.*, 2022 U.S. Dist. LEXIS 233930, at \*21-22

20   (S.D. Cal. Dec. 30, 2022) (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp.

21   294, 299 (N.D. Cal. 1995))………………………………………………………….18

22   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)…………………22

23   *In Re Bluetooth*, 654 F.3d at 947……………………………………………….23, 24

24   *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL DOCKET No. 901

25   ALL CASES, 1992 U.S. Dist. LEXIS 14337, at \*2 (C.D. Cal. June 10, 1992)….15

26   *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)…………………..14

27   *In re Portal Software, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 88886, at \*3 (N.D.

28   Cal. Nov. 26, 2007)………………………………………………………………..10

*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132…………………………………20

*Moore v. IKEA*, Los Angeles County Superior Court Case No. BC263646 (Sept. 2006)………………………………………………………………………………..21

*Nat'l Rural Telecomm. CCoop. V. DirecTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004)……………………………………………………………………………………14

*In re Ampicillin Antitrust Litig.* (D.D.C. 1981) 526 F.Supp. 494…………………………………………………………………………………..21

*Laffitte v. Robert Half Int'l, Inc.* (2016) 1 Cal.5th 480, 503……………………..20

*Lealao v. Beneficial Cal., Inc.* (2000) 82 Cal.App.4th 19, 41…………………..20

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963 (9th Cir. 2003)…………9

*Sorenson v. PetSmart, Inc.*, No. 2:06-CV-02674 (E.D. Cal. Dec. 17, 2008)……...16

*Viceral v. Mistras Grp., Inc.*, No. 15-CV-02198-EMC, 2016 U.S. Dist. LEXIS 140759 (N.D. Cal. Oct. 11, 2016)……………………………………………...13

**Statutes**

Labor Code Sec. 226, et seq…………………………………………………*passim*

Labor Code section 2699(i)……………………………………………………17

**Other Authorities**

*Manual for Complex Litigation* (3d ed. 1995) § 30.41……………………………14

**Rules**

Fed. R. Civ. Proc. 23(e)(2).  ……………………………………………………..9

Fed. R. Civ. Proc. 23(a)(3)……………………………………………………22

Fed. R. Civ. Proc. 23(a)(4)……………………………………………………22

Fed. R. Civ. Proc. 23(b)(3)……………………………………………………23

# MEMORANDUM OF POINTS AND AUTHORITIES

## VIII.  INTRODUCTION

Plaintiff Cesar Madrigal ("Plaintiff"), individually and on behalf of the proposed settlement class, requests that this Court preliminarily approve the Class and PAGA Representative Action Settlement Agreement ("Settlement" or "Settlement Agreement") entered into by and between Plaintiff and Defendants DIRECT LINE GLOBAL, LLC and SMG Extol, LLC ("Defendants").[1]

Plaintiff's claims stem from Defendants' alleged failure to pay wages, failure to pay minimum and overtime wages, meal and rest period violations, failure to reimburse necessary business expenses, failure to furnish accurate wage statements, and failure to timely pay final wages.  Plaintiff seeks penalties pursuant to the Private Attorney General Act ("PAGA").  On an individual basis only, Plaintiff also claimed retaliation and wrongful termination.  Under the Settlement, Defendants have agreed to pay a <u>non-reversionary</u> Maximum Gross Settlement Amount ("GSA") of $550,000 to resolve the Settlement Class members' claims on a class and representative basis.  The parties agreed to separately resolve Plaintiff's individual retaliation and wrongful termination claim via a separate settlement agreement.  Declaration of Liliuokalani Martin ("Martin Decl.") ¶ 17.  After deductions for Court-approved attorneys' fees and costs, the Class Representative Enhancement Award, and the PAGA Payment, the Net Settlement Amount shall be paid to all Participating Class Members, based on their respective number of workweeks worked during the Class Period. *Id.*, Settlement Agreement, ¶¶ 44, 45.

This proposed settlement came to fruition only after robust legal research and analysis, extensive investigation by the parties and by Class Counsel, the exchange of extensive class-wide data and analysis of that data, arm's-length settlement negotiations at a private mediation session with Louis Marlin, Esq., an

---

[1] The Settlement Agreement is attached as Exhibit A to the Declaration of Liliuokalani ("Lili Decl.").  The proposed Class Notice is attached as Exhibit A to the Settlement Agreement.

experienced wage and hour class action mediator, as well as extensive negotiations after the mediation, which eventually led to the settlement.  Martin Decl. ¶¶ 13.

This settlement provides substantial recovery on Defendants' alleged wage and hour violations. The estimated average, net individual settlement payment is projected at $839.74 per class member, a favorable result considering the formidable defenses that Defendants mounted in this action.  Based on the litigation risks involved, Plaintiff submits the proposed Settlement is well within the range of possible approval.  Moreover, the Settlement is the product of an informed and thoroughly vetted analysis of the claims and defenses, as well as the likelihood of obtaining class certification, and arm's-length settlement negotiations by experienced employment counsel.

Accordingly, Plaintiff respectfully requests that the Court grant preliminary approval of the proposed settlement.

## IX.    FACTUAL SUMMARY

### A. The Parties

Defendant Direct Line Global, LLC provides design, integration, installation, maintenance and management solutions for data center owners and providers. Plaintiff was employed by Defendant Direct Line Global, LLC as a Technician. Technicians such as Plaintiff were assigned to work at various client sites, installing data equipment.  Plaintiff was assigned to work at client sites in California and Iowa.  Each client site had varying degrees of security protocols required to enter onto the premises.  Security checks varied by location, and whereas Plaintiff alleges that he took at least 10 minutes per security check, Defendants content that security checks took 5 minutes or less.

Technicians and the majority of the class members were subject to a collective bargaining agreement that governed the terms of their employment, including meal and rest breaks, the payment of wages, and the conditions of employment.

There are approximately 359 class members.

### B. Plaintiff's Claims and Procedural History

On February 9, 2022, Plaintiff submitted his PAGA notice to the Labor Workforce Development Agency.  On August 3, 2022, Plaintiff filed his original Complaint in Alameda Superior Court.  The original Complaint alleged claims for retaliation, failure to pay wages, failure to pay minimum wages, failure to pay overtime, failure to provide meal and rest periods, wrongful termination, failure to provide itemized wage and hour statements, waiting time penalties, failure to permit inspection of personnel and payroll records, unfair competition, and sought PAGA civil penalties. On November 18, 2022, Defendants filed their Answer to Plaintiff's Complaint.  On November 21, 2022, Defendants filed their Notice of Removal to the Northern District of California.

On March 20, 2023, after months of engaging in robust legal research and analysis, extensive investigation by the parties and by Class Counsel, the exchange of extensive class-wide data and analysis of that data, the parties participated in an arm's-length mediation with Louis Marlin, Esq., an experienced wage and hour class action mediator. Martin Decl. ¶ 13. The parties reached a preliminary agreement to resolve the matter.  The parties participated in extensive negotiations over the following months to finalize the finer points of the Settlement Agreement that is now before the Court.

On September 9, 2023, the parties filed a Stipulation to File a First Amended Complaint to add allegations and claims to comport with the claims alleged in the PAGA letter (which included claims for failure to reimburse expenses).  On September 11, 2023, the Court issued an Order Granting the Stipulation to File a First Amended Complaint.  Plaintiff filed the First Amended Complaint on September 13, 2023.  This is the operative complaint in this matter.

### X.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

1

## C. The Settlement Is Fair, Reasonable, and Adequate

To receive judicial approval, a proposed class action settlement must be

"fair, reasonable, and adequate." *See* Fed. R. Civ. Proc. 23(e)(2).  In making this

determination, this Court may consider the following factors: (1) the strength of the

plaintiff's case; (2) the risk, expense, complexity, and likely duration of further

litigation; (3) the risk of maintaining class action status throughout trial; (4) the

amount offered in settlement; (5) the extent of discovery completed and the stage

of the proceedings; (6) the experience and views of counsel; (7) the presence of a

governmental participant; and (8) the reaction of the class members to the

proposed settlement.  *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963

(9th Cir. 2003).  Plaintiff addresses each relevant factor below.[2]

### 1.  The Strengths and Weaknesses of Plaintiff's Case

In reaching the decision to settle, Plaintiff's counsel considered the risks of

proceeding with the litigation, including inter alia: (a) the risk that class

certification could be denied; (b) possible enforcement issues based on the

collective bargaining agreements; (c) the burdens of proof necessary to establish

liability, (d) the viable defenses; (e) the difficulty in establishing damages; (f) the

likelihood that the court would reduce any civil penalties awarded as authorized

under California Labor Code section 2699.3 (g) the likelihood of success at trial;

and (h) the probability of appeal in the event of a favorable judgment.

Although he maintains that his claims are meritorious, Plaintiff

acknowledges there were substantial risks and uncertainty in proceeding with class

certification and eventual trial on the merits.  As described in section X.C.2, *infra*,

Defendants presented multiple defenses to Plaintiff's claims, both on the merits

and as to class certification.  As an initial matter, Defendants argued that some, if

---

[2] Because there are no government participants in the instant lawsuit other than to the extent the LWDA declines to oppose the PAGA portion of the settlement, Plaintiff has omitted the seventh factor from discussion.  As to the eighth factor, should the Court grant preliminary approval of the Settlement, such that notice is given to the Settlement Class Members, Plaintiff will address the eighth factor in the motion for final approval.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
Case No. 3:22-cv-07351-RS

not all, of Plaintiff's specific wage and hour claims occurred in Iowa and not in California. If true, California law does not apply. For example, Plaintiff's meal and rest break claims arose from work performed in Iowa, thus, Plaintiff would be barred from pursuing meal and rest break violations pursuant to California law. Moreover, Iowa does not have a PAGA statute, and no court has interpreted PAGA to apply to actions that took place out of California. Defendants also argued that to the extent the matter could proceed as a class action, it would be limited to the few employees what worked on the same client site as Plaintiff did, given that all of the client sites had varying security protocols. Additionally, Defendants also argued that employees were responsible for tracking and submitting their own time so not all employees would have gone through security checkpoints off the clock as Plaintiff alleged. While Plaintiff was prepared to litigate his claims through class certification and ultimately through trial, success was uncertain.

2. **Risk, Expense, and Duration of Further Litigation**

Although the parties engaged in significant informal discovery, investigation, and class-wide data analysis, they had not completed formal discovery. Martin Decl. ¶14. Preparation for class certification and trial remained for the parties, as well as the prospect of potential appeals. Martin Decl. ¶13. Thus, the parties would incur considerably more attorneys' fees and costs through trial. This settlement avoids those risks and accompanying expense. *See In re Portal Software, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 88886, at *3 (N.D. Cal. Nov. 26, 2007) ("inherent risks of proceeding to summary judgment, trial and appeal also support the settlement"). Continued litigation would be expensive, involving a lengthy trial, and would substantially delay and reduce any recovery by the Class Members. Martin Decl. ¶ [21. While Plaintiffs are confident in the merits of their claims, a legitimate controversy exists. *Id*. Plaintiffs also recognize that, given the allegedly varying policies and procedures at the different client sites in California, establishing liability and proving the amount of wages due to each

Class Member would be an expensive, time-consuming, and uncertain proposition. Martin Decl. ¶ 21.

In the event Plaintiff obtained a favorable judgment, an appeal would be a near-certainty. Martin Decl. ¶ 22. In contrast, because of the Settlement, Class Members will timely receive relief and avoid the risk of an unfavorable judgment. *Id.*. The fact that the Settlement will eliminate delay and further expense weighs strongly in favor of approval. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). Where, as here, the parties face significant uncertainty, the attendant risks also favor settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

Thus, this factor favors preliminary approval.

3.  **Risk of Maintaining Class Action Status**

Plaintiff had not yet moved for class certification. Martin Decl. ¶¶ 13, 14, 19. Absent settlement, there was a risk that there would not be a certified class at the time of trial, and that the Settlement Class members would not recover anything. Martin Decl. *Id*. As discussed, Defendants asserted several defenses to class certification which raised substantial risks associated with certifying the class. Defendants maintain that class certification would be unlikely given that class members all worked at various client sites which had varying security protocols and requirements. Moreover, Defendant argues that some employees were subject to collective bargaining agreements while others were not. Thus, this factor also supports preliminary approval.

4.  **The Amount of Settlement is Reasonable and Significant**

This proposed settlement provides substantial monetary recovery for Settlement Class Members in the face of heavily disputed claims. As demonstrated below, Defendants were able to establish not only compliant policies but exemptions to several of the claims alleged in Plaintiff's Complaint.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
Case No. 3:22-cv-07351-RS

1

2               a.  Failure to Pay All Minimum and Overtime wages

3                    Based on Failure to Pay for Off-the-Clock Work

4          Plaintiff alleges that Defendants underpaid wages due to its practice of

5    requiring employees to work off-the-clock.  For example, Plaintiff and putative

6    class members were required to go through security checkpoint each time they

7    entered and exited their worksite.  This allegedly took at least ten minutes, all

8    while they were off-the-clock.  As a result, Plaintiff was not compensated for the

9    time he spent going through the lengthy security process each day which was

10   approximately 100 minutes (or 1 hour and 35 minutes) each day.   Defendants

11   argue the following: Defendants deny that any security checkpoint required more

12   than five minutes to complete;  Additionally, Defendants argue that Plaintiff's

13   alleged experiences are not representative of the class members given that they all

14   worked at various client sites which had varying security protocols and

15   requirements;  and, significantly, all class members, including Plaintiff, submitted

16   their own handwritten timecards and could log the time they spent at security

17   checkpoints as there was no policy requiring employees to clock in after entering a

18   checkpoint or before exiting a checkpoint.   Plaintiff attributed $990,874.80 to this

19   claim based on an assumption of at a minimum 10 minutes worked off the clock

20   each day for one week.

21               b.  Failure to Provide Meal Periods and Rest Breaks

22          Plaintiff contends that Plaintiff and the Settlement Class members were not

23   provided meal periods as required under California law, and specifically that meal

24   periods were missed, provided late (i.e., beginning after 5 hours of work), or were

25   short.  Plaintiff also contends that Defendants failed to provide off-duty,

26   uninterrupted meal periods.  Defendants argued that it has always maintained a

27   legally-compliant meal period policy, that it has always provided meal periods

28

14

consistent with that policy, and that it is only required to "provide" the opportunity to take meal periods, not "ensure" meal periods are taken. *Id.*; *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1038 (2012). Defendants also argued all class members who were subject to the collective bargaining agreement in this case were exempt from California meal and rest break requirements pursuant to Labor Code section 512(e). Defendants also argued that individualized inquiries would be needed to determine whether each employee missed or took a late meal period on each shift, why any given meal period was taken late or missed, and whether the employee validly waived the meal period, thereby making certification of this claim unlikely.

Plaintiff contends that Plaintiff and the Settlement Class members were not provided with an uninterrupted rest period for every period worked of four hours. Defendants argued that it has always maintained a legally-compliant rest period policy, that it has always provided rest periods consistent with that policy. Defendants also argued that individualized inquiries would be needed to determine whether each employee missed or took a late rest period on each shift, why any given rest period was taken late or missed, thereby making certification of this claim unlikely.

Plaintiff' estimated an exposure of $1,981,749.60 (inclusive of both meal and rest breaks) for these claims assuming at a minimum one missed meal breaks and one missed rest breaks per week.

c. <u>Failure to Reimburse Necessary Business Expenses</u>

Plaintiff contends that Plaintiff and the Settlement Class members were not reimbursed for all necessary expenditures incurred in the performance of their duties, including but not limited to, the use of personal cellphones for business purposes. Defendants argued that it has always maintained a legally-compliant policy for reimbursement of business expenses by implementing procedures for

employees to submit their expense reimbursements and what expenses are properly reimbursable.  Defendants also argued that individualized inquiries would be needed to determine whether each employee incurred reimbursable businesses expenses, thereby making certification of this claim unlikely.

Plaintiff estimated a maximum exposure of $172,320.00 for these claims.

d.  Waiting Time Penalties

Plaintiff contends that Defendants failed to pay Plaintiff and the Settlement Class Members' accrued wages and other compensation due immediately upon termination or within 72 hours of resignation.  This includes, but is not limited to, unpaid minimum wages, overtime compensation, meal and rest break compensation, reimbursement of business expenses, and more.   Defendants argued that it has always maintained a legally-compliant policy for paying employees accrued wages and other compensation upon termination or within 72 hours upon resignation, as required.   Defendants also argued that individualized inquiries would be needed to determine whether each employee was paid their wages and compensation owed upon their employment termination or resignation, thereby making certification of this claim unlikely.  Additionally, Plaintiff would not be entitled to waiting time penalties given that he was employed in Iowa at the time he separated from his employment, thus, he was not subject to California law. Plaintiff estimates a maximum exposure of $1,408,590.00 for these claims.

e.  Failure to Provide Accurate Itemized Wage Statements

Plaintiff contends that Plaintiff and the Settlement Class members were not provided accurate itemized wage statements by Defendants showing total hours worked, hourly wages, gross wages, deductions, premiums paid, and net wages earned.  Defendants argued that it has always maintained a legally-compliant policy for providing employees accurate itemized wage statements and that the wage statements Defendants provided to their employees complied with Labor

Code Sec. 226, et. seq. Defendants also argued that individualized inquiries would be needed to determine whether which employee's wage statement is deficient and not code compliant, thereby making certification of this claim unlikely.

Plaintiff estimates a maximum exposure of $1,436,000.00 for these claims.

### f. PAGA Penalties

Plaintiff, as an aggrieved employee, bringing forth an action on behalf of himself and other current or former employees, seek statutory penalties for Defendant's violations of the California Labor Code. Defendant denies that Plaintiff would be able to proceed as a PAGA representative as Plaintiff's claims are limited to work hours and meal and rest breaks in Iowa. Iowa has no PAGA statute, and the no court has interpreted PAGA to extend to actions that took place outside of California. As such, Defendants argued that Plaintiff would not be able to proceed with his PAGA claims.

Plaintiff estimates a maximum exposure of $1,776,600.00 for these claims. Defendant argues they clearly demonstrated that Plaintiff had no basis for a PAGA claim, and the underlying PAGA claims were, as stated above $45,000 out of $550,000 was determined by the parties to be a fair and equitable settlement of the allegations raised in the PAGA letter on behalf of other employees.

### g. Total Class-Wide Damages

Under these figures, Plaintiff found the total possible value of the claims in this matter to be about $7,766,134.40, including penalties, if Plaintiff had successfully certified each claim, overcame the issues of individualized inquiry, and prevailed at trial. However, given the strong evidence regarding Defendant's compliant policies, CBA exemptions, proof of payment for hours worked and proof of breaks taken, the $550,000 Gross Settlement Amount, (plus a separate settlement of $50,000 for Plaintiff's wrongful termination and retaliation claim) is a favorable result in light of the numerous challenges this action posed for

Plaintiff, outlined above and represents approximately 7.08% percent of the total possible damages at issue in this matter.

The percentage of liability exposure recovered in this case is within the range of percentages routinely approved by courts. *See, e.g.*, *Viceral v. Mistras Grp., Inc.*, No. 15-CV-02198-EMC, 2016 U.S. Dist. LEXIS 140759 (N.D. Cal. Oct. 11, 2016) (approving wage and hour class action settlement amounting to 8.1 percent of potential damages); *Dunleavy v. Nadler*, 213 F.3d 454 459 (9th Cir. 2000) (approving settlement which represented "roughly one-sixth of the potential recovery"); *Nat'l Rural Telecomm. CCoop. V. DirecTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial").

Given the tremendous risks involved, especially with class certification, the proposed settlement is well within the range of reasonableness.

### 5. **Discovery Completed and the Status of Proceedings**

The parties engaged in significant investigation, informal class-wide discovery consisting of a random, twenty percent sample of payroll and time records for the putative class, and analysis prior to reaching the proposed settlement. As noted above, Defendants provided detailed data regarding Settlement Class Members' compensation, hours worked, and other relevant payroll data. It was only after this exchange of comprehensive data and information that the parties participated in a full-day mediation with an experienced wage and hour mediator, engaged in months of post-mediation negotiations, and ultimately reached the proposed settlement. This factor supports preliminary approval.

### 6. **The Experience and Views of Counsel**

"Parties represented by competent counsel are better positioned than courts

to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, Plaintiff is represented by experienced wage and hour class action counsel who have significant wage and hour class action experience, and who have successfully participated in class actions in the courts of California. Martin Decl. ¶¶ 2-9. This factor supports preliminary approval. *See Gribble v. Cool Transports Inc.*, 2008 U.S. Dist. LEXIS 115560, at *9 (C.D. Cal. Dec. 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.")

### D. The Preliminary Approval Standard Is Met

The Court can grant preliminary approval of the Settlement and direct that notice be given if the proposed settlement: (1) falls within the range of possible approval; (2) appears to be the product of serious, informed and non-collusive negotiations; and (3) has no obvious deficiencies. *See Manual for Complex Litigation* (3d ed. 1995) § 30.41. The Ninth Circuit also has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

### 1. The Settlement is Within the Range of Possible Approval

The proposed settlement reflects a substantial recovery in light of real litigation risks on both merits and certification. Plaintiff submits that the proposed settlement is within the range of possible approval, such that notice should be provided to the Class Members so that they can consider the settlement. The Court will have the opportunity to again assess the reasonableness of the settlement after Class Members have had the opportunity to opt-out or object.

### 2. The Settlement Resulted From Arm's-Length Negotiations

The Settlement is a result of extensive arm's-length negotiation by counsel and is thus entitled to an initial presumption of fairness. *In re First Capital*

*Holdings Corp. Fin. Prods. Sec. Litig.*, MDL DOCKET No. 901 ALL CASES, 1992 U.S. Dist. LEXIS 14337, at *2 (C.D. Cal. June 10, 1992) ("[T]here is typically an initial presumption of fairness where the settlement was negotiated at arm's length."). Plaintiff thoroughly vetted the claims at issue and conducted extensive factual investigation and legal research and analysis. Martin Decl. ¶ 13. The parties reached a settlement only after mediating with experienced wage and hour mediator Louis Marlin. Martin Decl. *Id.* The parties then negotiated the details of the settlement for months before finalizing the Settlement.

### 3. The Settlement is Devoid of Obvious Deficiencies

#### a. Settlement Provides Significant Monetary Recovery

Defendants have agreed to pay a Gross Settlement Amount of $550,000, which shall be distributed to Plaintiff's individual claims, and Participating Class Members on a non-reversionary basis. Moreover, no Class Member will be required to submit a claim form to receive a payment. The principal terms of the Settlement are summarized below:

| | |
|---|---|
| Gross Settlement Amount | $550,000.00 |
| *Minus* Court-Approved Attorneys' Fees (33 1/3%) | -$183,333.33 |
| *Minus* Court-Approved Costs (up to) | -$20,000.00 |
| *Minus* Court-Approved Enhancement Award | -$5,000.00 |
| *Minus* Settlement Administration Costs | -$6,450.00 |
| Net Settlement Amount | $335,216.67 |
| *Minus* Amount paid to LWDA: | -$33,750.00 |
| **Total Amount Paid to Settlement Class** | **$301,466.67.** |
| | |

Thus, the Settlement requires Defendants to pay a total of at least $301,466.67 to Settlement Class Members. According to Defendants, there are

approximately 359 Class Members. Accordingly, the estimated average net individual settlement payment is projected at $839.74.  This average recovery is in line with or exceeds recoveries in other wage and hour class action settlements. *See, e.g.*, *Sorenson v. PetSmart, Inc.*, No. 2:06-CV-02674 (E.D. Cal. Dec. 17, 2008) (average recovery of about $60 per class member).

### b.  Released Claims

 The scope of the Released Class Claims and the Released PAGA Claims are fair and reasonable as they only release claims that are alleged in the First Amended Complaint.  *See* Settlement Agreement ¶¶ 28, 29.

### c.  Settlement Formula

The amounts for Court-approved attorneys' fees, litigation costs, incentive award, administration costs and PAGA payment will be deducted from the Gross Settlement Amount to arrive at the Net Settlement Amount ("NSA"), which will be distributed as follows.

$45,000 of the Gross Settlement Amount has been designated the "PAGA Payment."  Pursuant to Labor Code section 2699(i), 75 percent of that amount, or $33,750, will be paid to the LWDA, and the remaining $11,250 will be distributed *pro rata* to PAGA members who were employed by Defendants at any point from May 20, 2021 through July 18, 2023 ("PAGA Period"), based on their number of workweeks worked during that period. *See* Settlement ¶ 45.

The NSA will be distributed to all Settlement Class Members who do not opt-out of the Settlement (i.e. Participating Class Members), *pro rata* based on their respective number of workweeks worked in the Class Period. *See* Settlement ¶ 44.

By taking into account the proportional number of workweeks worked by Participating Class Members and PAGA Members, the Settlement formula compensates Participating Class Members based on the extent of their potential

1
2

injuries and their potential damages as alleged in the Complaint, and is thus fair,

adequate, and reasonable.

3
4
5
6
7

Participating Class Members will be bound by the Settlement's terms and

will release all Released Class Claims. *See* Settlement ¶ 57.  Additionally, all

PAGA Members (regardless of whether they opt out of the class portion of the

Settlement) who worked for Defendants during the PAGA Period will release all

Released PAGA Claims. *Id.*

8
9
10
11
12
13
14

The Settlement is non-reversionary.  Any portion of the requested attorneys'

fee award that are not approved by the Court shall become part of the Net

Settlement Amount.  *See* Settlement ¶ 7.  Any settlement amount for checks sent to

Class Members or Aggrieved Employees that are not cashed within 180 days of

date of mailing shall be paid to the California's State Controller's Office to held in

trust for such class members pursuant to California's Unpaid Property Law.  *See*

Settlement ¶ 61.

15

### d.  Enhancement Payment, Attorneys' Fees, and Costs

16
17
18
19
20
21
22
23
24
25
26
27

Enhancement payments "compensate class representatives for work done on

behalf of the class, [and] to make up for financial or reputational risk undertaken in

bringing the action." *Cellphone Termination Fee Cases*, 186 Cal. App. 4th at 1394.

Plaintiffs "should be compensated for the expense or risk they have incurred in

conferring a benefit on other members of the class." *Clark v. Am. Residential*

*Services LLC*, 175 Cal. App. 4th 785, 806 (2009).  "Factors to be considered in

granting a service award include: (1) the risk to the class representative in

commencing suit, both financial and otherwise; (2) the notoriety and personal

difficulties encountered by the class representative; (3) the amount of the time and

effort expended by the class representative; (4) the duration of the litigation and;

(5) the personal benefit (or lack thereof) enjoyed by the class representative as a

result of the litigation." *Guerrero v. United States Gypsum Co.*, 2022 U.S. Dist.

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
Case No. 3:22-cv-07351-RS

LEXIS 233930, at *21-22 (S.D. Cal. Dec. 30, 2022) (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)).

Here, the proposed $5,000 enhancement payment to Plaintiff is reasonable. The Class Representative enhancement payment is in recognition of Plaintiff's significant contributions to this case by way of providing documents and information, conducting factual research, and participating in the prosecution of this litigation. Plaintiff's requested enhancement payment is intended to recognize the time and efforts that he expended for the Class, as well as the substantial risks he undertook in stepping forward as a named plaintiff in a wage and hour class action against a former employer.

## XI.    PREVAILING PARTY IS ENTITLED TO RECOVER REASONABLE ATTORNEY'S FEES AND COSTS

Class Counsel has been investigating and litigating this action for over a year. The ongoing work has been extensive, demanding, and ultimately successful in achieving a substantial settlement resolution. Martin Dec. ¶ 13. Class Counsel reviewed numerous pages of documents and data and also interviewed and obtained information from Plaintiff, researched applicable law, undertook damages/valuation calculations, and met and conferred with Defendant's counsel regarding the pleadings, informal discovery, and the production of documents and data prior to and post mediation to come to a settlement resolution. Counsel for the Parties also undertook extensive settlement discussions, which included participating in a formal, full-day mediation.

Class Counsel is well-experienced in employment law and wage-and-hour class action litigation and used that experience to obtain a great result for the Class. Martin Dec. ¶¶ 2-9.

The Settlement establishes a Maximum Gross Settlement Amount of Five Hundred Fifty Thousand Dollars ($550,000.00), and provides for Class Counsel to

1
2
3
4
5
6
7
8
9
10
11
12
13

apply to the Court for Attorneys' Fees and Costs, consisting of attorneys' fees in an amount not to exceed thirty three and one-third percent (33 1/3 %) of the Class Counsel Award (i.e., $183,333.33) and an amount not to exceed Twenty Thousand Dollars ($20,000.00) for costs and expenses.  The attorneys' fees provided for by the Settlement is commensurate with: (1) the risk that Class Counsel took in bringing and litigating the case, (2) the extensive time, effort and expense that Class Counsel has dedicated to the case, (3) the skill and determination that Class Counsel has shown, (4) the results that Class Counsel has achieved throughout the litigation, and (5) the value of the Settlement that Class Counsel has achieved for the Class Members. The proposed Class Notice provides Class Members with information about the amount allocated toward the Attorneys' Fees and Costs, and that an award of the Attorneys' Fees and Costs will be sought, as provided for by the Settlement.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Trial courts have "wide latitude" in assessing the value of attorneys' fees and their decisions will "not be disturbed on appeal absent a manifest abuse of discretion." *Lealao v. Beneficial Cal., Inc.* (2000) 82 Cal.App.4th 19, 41. Indeed, it is long settled that the "experienced trial judge is the best judge of the value of professional services rendered in his court." *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132. California law provides that attorney fee awards should be equivalent to fees paid in the legal marketplace to compensate for the result achieved and risk incurred. *Laffitte v. Robert Half Int'l, Inc.* (2016) 1 Cal.5th 480, 503 (citing *Lealao*, *supra*, 82 Cal.App.4th at 48-49). In *Lealao*, the court held that when an action leads to a recovery that can be "monetized" with a reasonable degree of certainty, the trial court should "ensure that the fee awarded is within the range of fees freely negotiated in the legal marketplace in comparable litigation." *Id*. at 50. In cases where class members present claims against a settlement fund and the settlement agreement provides that the defendant agrees to paying the attorneys a percentage

of the same, use of that percentage method is appropriate. *Id*. at 32.

The propriety of calculating and awarding attorneys' fees as a percentage of a settlement that has, by litigation, been preserved or recovered for the benefit of others, has been confirmed by the California Supreme Court. *Laffitte*, *supra*, 1 Cal.5th 480 at 486 & 506. The California Supreme Court has taken the position that "[t]rial courts have discretion to conduct a lodestar cross-check on a percentage fee," "they also retain the discretion to forgo a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee[,]" and "[t]he percentage of fund method survives in California." *Id*. (internal quotation marks omitted).

Historically, courts have awarded fees as high as fifty percent (50%) of the settlement, depending on the circumstances of the case. *Newberg*, § 14.03; see also *In re Ampicillin Antitrust Litig.* (D.D.C. 1981) 526 F.Supp. 494 (awarding attorneys' fees in the amount of 45% of the $7.3 million settlement); *Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.* (S.D.N.Y. 1979) 480 F.Supp. 1195 (awarding approximately 53% of the settlement as attorneys' fees). California courts routinely approve class action attorneys' fee awards "averag[ing] around one-third of the recovery." *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 66 n.11 (lower court found 20 to 40 percent range of contingency fee in marketplace was appropriate in class actions); see also *Estrada v. Dr. Pepper/Seven-Up,* Los Angeles County Superior Court Case No. BC262247 (May 2005) (wage and hour); *Moore v. IKEA*, Los Angeles County Superior Court Case No. BC263646 (Sept. 2006) (wage and hour).

To calculate the fee in a common-fund case, the district court "has discretion to apply either the lodestar method or the percentage-of-the-fund method in calculating a fee award." *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016).

Plaintiffs' counsel's request is reasonable under both methods, as the

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
Case No. 3:22-cv-07351-RS

requested fees are in line with the percentage awarded as fees in other class action cases litigated in the federal courts, including this district. See e.g., Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc., No. 19-CV-07087-DMR, 2021 WL 4133860, at *4-6 (N.D. Cal. Sept. 10, 2021) (approving attorney fee of one-third in wage and hour class, collective and PAGA action); Chavez v. Converse, Inc., No. 15-CV-03746-NC, 2020 WL 10575028, at *6 (N.D. Cal. Nov. 25, 2020) (awarding attorneys' fees of one-third of gross settlement amount because counsel "achieved a strong result through skillful litigation and settlement negotiation."); Fronda v. Staffmark Holdings, Inc., No. 15-cv-02315-MEJ, 2018 WL 2463101, at *12-13 (N.D. Cal. June 1, 2018) (granting final approval of attorneys' fees at approximately one-third of $5.6 million settlement and applying 2.66 multiplier to reach $1,866,666.67 fee request); Villalpando v. Exel Direct Inc., No. 3:12-CV-04137-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016) (granting attorney fee request of "one-third of the Settlement Fund, which is reasonable under both applicable law, and in light of the contingent risk, Counsel's documented lodestar, the complex and protracted nature of the case, and strong result for the Class."); Wren v. RGIS Inventory Specialists, No. C-06-05778 JCS, 2011 WL 1230826, at *28-29 (N.D. Cal. Apr. 1, 2011), supplemented, 2011 WL 1838562 (N.D. Cal. May 13, 2011) (approving attorneys' fee of 42% of common fund in wage and hour class action). The fee request is equivalent to 33-1/3% of the common fund and equivalent to Plaintiffs' counsel's current combined lodestar of approximately $123,750 times a 1.46 multiplier based on approximately 225 hours of work between Plaintiff's counsel Liliuokalani Martin whose hourly rate is $650 and Plaintiff's counsel Michael Juarez-Munoz whose hourly rate is $500. The lodestar does not include Plaintiffs' counsel's future work on the case which is expected to require approximately 50 hours nor does it include the unique value and experience which Downtown LA Law Group brought to this case.

1
2
Class Counsel has borne all of the risks and costs of litigation and will not receive any compensation until recovery is obtained.

3
4
5
Class Counsel will provide extensive evidence as to the time worked, litigation efforts, and further argument at the time of filing Plaintiff's motion for attorneys' fees and costs.

6
7
8
9
10
11
12
13
The Settlement is non-revisionary.  Any portion of the requested attorney's fees award that are not approved by the Court shall become part of the Net Settlement Amount. *See* Settlement ¶ 7.  Any settlement amount for checks sent to Class Members or Aggrieved Employees that are not cashed within 180 days of date of mailing shall be paid to the California's State Controller's Office to held in trust for such class members pursuant to California's Unpaid Property Law. See Settlement ¶ 61.

14
15
16
Considering the work performed and the risks incurred, the attorneys' fees provided for by the Settlement and to be requested by Class Counsel are well within the range of reasonableness.

17
## XII.   THE SETTLEMENT MERITS CERTIFICATION

18
### A. Rule 23(a)(1) – Numerosity Is Satisfied

19
20
Numerosity is satisfied because, as stated, there are approximately 359 Class Members.

21
### B. Rule 23(a)(2) – Commonality Is Satisfied

22
23
24
25
26
27
Commonality is satisfied because there are common questions of fact and law arising from Settlement Class Members' employment with Defendants, such as Defendants' alleged failure to pay overtime or minimum wages, reimburse for necessary business expenses, provide accurate wage statements, or to provide compliant meal and rest periods – all of which Plaintiff contends arise from a common core of facts.

28

1

2

### C. Rule 23(a)(3) – Typicality Is Satisfied

"Under [Rule 23(a)(3)'s] permissive standards, representative claims are

3

'typical' if they are reasonably co-extensive with those of absent class members."

4

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, Plaintiff's

5

claims are typical of the Settlement Class. Plaintiff was employed by Defendants

6

as a non-exempt employee in California during the Class Period and was subjected

7

to Defendants' uniform policies and practices. As the proposed Settlement Class

8

consists only of other non-exempt employees like Plaintiff, and because Plaintiff's

9

claims stem from Defendants' policies and practices that applied uniformly to the

10

Settlement Class Members, typicality is satisfied.

11

### D. Rule 23(a)(4) – Adequacy Is Satisfied

12

Plaintiff is an adequate class representative under Rule 23(a)(4). To satisfy

13

this requirement, Plaintiff and his counsel must not have conflicts of interest with

14

the proposed Class and must vigorously prosecute the action on behalf of the

15

Class. *See Hanlon*, *supra*, 150 F.3d at 1020. Here, there is no conflict of interest

16

between Plaintiff and the proposed Settlement Class consisting of other non-

17

exempt employees. As detailed above, the proposed settlement reflects a

18

substantial recovery of Settlement Class Members' alleged damages. Given the

19

relatively small amounts at issue for each individual Settlement Class Member,

20

Plaintiff asserts it is unlikely any Settlement Class Member, especially current

21

employee, would have pursued these claims individually. *See Leyva v. Medline*

22

*Indus., Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the

23

putative class members' potential individual monetary recovery, class certification

24

may be the only feasible means for them to adjudicate their claims. Thus, class

25

certification is also the superior method of adjudication."). Plaintiff's counsel also

26

have no conflicts with Settlement Class Members, and are adequate to represent

27

the Settlement Class given their skills, qualifications, and experience. Martin Decl.

28

1    ¶ 3.

2    ### E.  Rule 23(b)(3) – Predominance Is Satisfied

3    Predominance tests "whether proposed classes are sufficiently cohesive to

4    warrant adjudication by [class action] representation." *Amchem v. Windsor*, 521

5    U.S. 591, 623 (1997).  Because Plaintiff seeks certification for settlement purposes

6    only, however, manageability of trial need not be considered. *Id.* at 620. As all

7    proposed Settlement Class Members were allegedly deprived of overtime wages

8    and minimum wages, suffered meal and rest period violations, and/or suffered the

9    other wage and hour violations described herein due to Defendants' uniform

10   policies and practices, the proposed Settlement Class is "sufficiently cohesive"

11   since a "common nucleus of facts" and "potential legal remedies" dominate. *See*

12   *Hanlon*, *supra*, 150 F.3d at 1022.

13   ### F.  The *Bluetooth* Factors Are Satisfied

14   This Court must also review this settlement under the factors described in *In*

15   *Re Bluetooth*, which requires courts to scrutinize attorneys' fee agreements in class

16   action settlements for "subtle signs that class counsel have allowed pursuit of their

17   own self-interests an that of certain class members to infect the negotiations…" *In*

18   *Re Bluetooth*, 654 F.3d at 947.  *In Re Bluetooth* identified three major signs of

19   potential attorney collusion: (1) "when counsel received a disproportionate

20   distribution of the settlement;" (2) "when the parties negotiate a 'clear sailing

21   arrangement,'" under which the defendant agrees not to challenge a request for an

22   agreed upon attorneys' fee; and (3) when the agreement contains a "kicker" or

23   "reverter" clause that returns unawarded fees to the defendant, rather than the

24   class." *Briseno v. Henderson*, 998 F.3d 1014, at *6 (9th Cir. 2021).

25   Here, class counsel only seeks a maximum fee award of 1/3 of the value of

26   the settlement, which is in line with what is commonly provided in California class

27   action matters like this case.  Settlement at ¶ 37.  Also, there is no such "kicker" or

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
Case No. 3:22-cv-07351-RS

"reverter" as contemplated in *Henderson*. As such, this settlement passes scrutiny under *In Re Bluetooth*.

## XIII.  THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS

Due Process requires that notice be provided to class members by the best reasonable method available. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974). Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

Here, Plaintiff's counsel sought quotes from the following reputable class action administrators: 1) ILYM Group, Inc.; 2) Simpluris Legal Administration Services; 3) CPT Group; 4) Kroll; and 5) Phoenix Class Action Administration Solution.

ILYM Group, Inc. provided Plaintiff's counsel the best quote for the services to be rendered at $6,450. Simpluris Legal Administration Services provided a quote of $9,000. Kroll informed Plaintiff's counsel that their services are "substantially more expensive for matters of this class size" and did not provide a quote. Plaintiff's counsel did not hear back from CPT Group or Phoenix Class Action Administration Solution.

Plaintiff proposes that the settlement be administered by ILYM Group, Inc., an experienced class action settlement administrator, which will mail the proposed Class Notice to the Settlement Class. *See Martin* Decl.. ¶ 16. The proposed Class Notice advises Class Members of the key terms of the Settlement and uniform 45-day deadline to opt-out, file a dispute, or file an objection, and also provides a summary of the alleged claims, explains the recovery formula and expected recovery amount for each member of the Settlement Class, provides contact information for Class Counsel, and notifies them of the date for the final approval

1    hearing. Settlement, at ¶ 33.

2        Within ten (10) calendar days after receiving the Class List from Defendant,

3    the Claims Administrator shall mail a Notice Packet to all Class Members and

4    Aggrieved Employees via regular First-Class U.S. Mail, using the most current,

5    known mailing addresses identified in the Class List.

6        All Class Members will be mailed a Notice Packet. Each Notice Packet will

7    provide: (a) information regarding the nature of the Action; (b) a summary of the

8    Settlement's principal terms; (c) the Settlement Class definition; (d) each Class

9    Member's estimated Individual Settlement Payment and the method for calculating

10   Individual Settlement Payments; (e) the dates which comprise the Class and PAGA

11   Periods; (f) instructions on how to submit valid Requests for Exclusion or

12   objections; (g) the deadlines by which the Class Member must postmark Request

13   for Exclusions or file and serve Notices of Objection to the Settlement; and (h) the

14   claims to be released.

15       Any Class Member wishing to opt-out from the Settlement Agreement must

16   sign and postmark a written Request for Exclusion to the Claims Administrator

17   within the Response Deadline. The date of the postmark on the return mailing

18   envelope shall be the exclusive means to determine whether a Request for

19   Exclusion has been timely submitted. Requests for Exclusion must: (a) contain the

20   name, address, telephone number, and the last four digits of the Social Security

21   number of the person requesting exclusion; (b) be signed by the Class Member; (c)

22   clearly state that the Class Member does not wish to be included in the Settlement;

23   (d) be returned by mail to the Claims Administrator at the specified address

24   indicated in the Notice Packet; and (e) be postmarked on or before the Response

25   Deadline. The date of the postmark on the return mailing envelope shall be the

26   exclusive means to determine whether a request for exclusion has been timely

27   submitted. A Class Member who does not request exclusion from the Settlement

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
Case No. 3:22-cv-07351-RS

shall be deemed a Class Member and will be bound by all terms of the Settlement, if the Settlement is granted final approval by the Court. Aggrieved Employees may not opt out of the Aggrieved Employee Payment or the release of the PAGA Claims in this Action.

## XIV.  NOTICE TO GOVERNMENTAL AGENCIES

Plaintiff's counsel previously uploaded the motion and all exhibits to the website of the Labor Workforce Development Agency ("LWDA") regarding the proposed settlement of a PAGA case.

The Class Action Fairness Act of 2005 ("CAFA") is well known for expanding federal subject matter jurisdiction for class actions.  CAFA also imposes an obligation on all class action Defendants to further serve notices of proposed class action settlement to each state and federal official of each state in which a class member resides no later than 10 days after a proposed settlement of a class action is filed in court. (See 28 U.S.C §§1711(2) and 1715(b)). CAFA is not implicated in this matter as it was removed pursuant to diversity jurisdiction alone; however, Defendants will file the appropriate notices if required by the Court.

## XV.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement; conditionally certify the Class for settlement purposes; preliminarily appoint and designate Downtown LA Law Group, LLP as Class Counsel; preliminarily appoint and designate Plaintiff Cesar Madrigal as Class Representative; appoint ILYM as Claims Administrator; preliminarily approve the allocations for Attorneys' Fees and Costs, Class Representative Enhancement Payment, PAGA Payment, and Claims Administration Cost; approve the proposed Class Notice; direct the Claims Administrator to undertake the notice and settlement administration process in conformity with the deadlines and procedures provided by the Settlement

1
2

Agreement; and schedule a Final Approval Hearing to take place in approximately three months after the Preliminary Approval Order is entered.

3
4

Concurrently with the filing of this motion, my office uploaded the motion and all exhibits to the website of the Labor Workforce Development Agency.

5

Dated:  November 30, 2023                    DOWNTOWN LA LAW GROUP, LLP

6
7
8

By: _____

9
10

Liliuokalani Martin
Michael Juarez-Munoz
Counsel for Plaintiff

11

4880-7383-1316, v. 1

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
Case No. 3:22-cv-07351-RS