UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CESAR MADRIGAL,

    Plaintiff,

v.

SMG EXTOL, LLC, et al.,

    Defendants.

Case No. 22-cv-07351-RS

**ORDER DENYING MOTION FOR PRELIMINARY APPROVAL**

## I. INTRODUCTION

Plaintiff Cesar Madrigal brings both class claims alleging violations of state wage and hour laws and individual claims alleging retaliation and wrongful termination against Defendants SMG Extol, LLC, and Direct Line Global, LLC. Plaintiff now moves for preliminary approval of a proposed class action settlement of the classwide claims. The parties have agreed to settle Madrigal's individual claims separately for $50,000. The motion is suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b) and the hearing set for January 11, 2024, is vacated. For the reasons explained below, Plaintiff's motion is denied without prejudice.[1]

---

[1] Though the motion is denied without prejudice, it is unlikely any motion for preliminary approval based on the parties' current settlement agreement could be granted given the significant issues identified in this Order.

## II. BACKGROUND

Plaintiff originally filed suit in Alameda Superior Court seeking individual relief on various wage and hour claims as well as claims for retaliation, wrongful termination, and unfair competition. Defendants timely removed to federal court, and Plaintiff unsuccessfully sought remand back to state court. The case was referred to mediation and the parties eventually reached agreement on settlement terms. As part of their settlement agreement, the parties agreed Plaintiff would file an amended complaint that added, for the first time, class action claims against Defendants. These claims were added to "comport with the release provided for" in the parties' settlement agreement. *See* Dkt. 26, at 2.

The proposed settlement agreement provides that Defendants will pay a non-reversionary gross amount of $550,000 to the Settlement Class, defined as "[a]ll current and former hourly-paid or non-exempt employees of the Company who worked in the State of California at any time between August 3, 2018, and July 18, 2023." Dkt. 40-1, at 41. From this gross amount, Plaintiff proposes to deduct $183,333.33 in attorney fees, $20,000 in costs, $5,000 in a service award for Madrigal, and $6,450 to cover settlement administration costs. $45,000 has been designated as the "PAGA Payment," and pursuant to California Labor Code § 2699(i), 75% shall be paid to the California Labor and Workforce Development Agency. Subtracting these sums, the class is left with $301,466.67 to be divided proportionally between the 359 Class Members based on the number of workweeks they worked, resulting in an average recovery per Class Member of $839.74. In exchange, the parties represent the Class Members release all of the claims that were or could have been raised in this action "based on the facts set forth in the First Amended Complaint." *Id.* at 20 ¶ 29.

## III. LEGAL STANDARD

The Ninth Circuit maintains a "strong judicial policy that favors settlements" in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Under Rule 23(e), courts must determine whether a settlement agreement is "fair, adequate, and reasonable to all concerned." *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019). This

inquiry involves assessing whether the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted). Courts consider a range of additional factors in evaluating a motion for preliminary approval, including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

Under Rule 23(e), parties may seek approval of classes "proposed to be certified for the purposes of settlement." Fed. R. Civ. P. 23(e). When a settlement is negotiated before class certification, a district court has a heightened procedural burden to look for "evidence of collusion or other conflicts of interest." *In re Bluetooth*, 654 F.3d at 946. "Subtle signs" of collusion weighing against preliminary approval and for which district courts must look where settlement is reached before class certification include:

> (1) when counsel receive a disproportionate distribution of the settlement;" (2) when the parties negotiate a 'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed [funds] to the defendant.

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019) (internal quotation marks omitted) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015)). The Northern District of California has adopted additional procedural guidance for evaluating proposed settlements.[2]

---

[2] *See* https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.

## IV. DISCUSSION

**A. Fairness, Adequacy, and Reasonableness under Rule 23(e)**

### 1. Discount

"In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is 'plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Cotter v. Lyft*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (quoting *In re High-Tech Antitrust Litig.*, No. 11-cv-2509, 2014 WL 3917126, at *3 (N.D Cal. 2014)). Plaintiffs should provide supporting detail—or "show their work"—so that a court can compare the value of a settlement with the maximum potential value of class claims. *See Haralson*, 383 F. Supp. 3d at 970.

#### i. Maximum potential exposure

Plaintiff does not provide enough information in their motion for preliminary approval to determine whether the proposed settlement satisfies Rule 23(e). Plaintiffs seeking settlement in wage and hour cases should "show their work" and detail "how many employees were allegedly shortchanged, calculate and explain . . . the amount by which typical employees were allegedly shortchanged on an hourly or daily basis, and show or estimate the number of hours or days the employees were allegedly shortchanged." *Eddings v. DS Servs. of Am., Inc.*, No. 15-cv-2576, 2016 WL 3390477, at *1 (N.D. Cal. May 20, 2016). This is because a court needs some reliable basis to determine the approximate value of class claims in order to protect absent class members.

At the first preliminary approval hearing, the parties were informed they needed to justify their sharp discounting of the total value of the Class Members' claims.[3] Plaintiff originally estimated the maximum potential value of the class claims to be $17,022,346.90, which means the initially proposed Gross Settlement Amount—$600,000—was just 3.2% of Defendants' total

---

[3] Rather than denying the first motion for preliminary approval, the Court explained its central concerns with the settlement as presented and provided the parties an opportunity to revise their motion.

exposure. *See* Dkt. 28, at 14.[4] In his revised motion for preliminary approval, Plaintiff now claims the total value of the class claims is $7,766,134.40—$10 million less than Plaintiff's original estimate (provided less than three months earlier). Plaintiff reduced (1) the estimated value of the class claim that Defendants failed to pay class members for time spent traversing security checkpoints from $5,350,128.80 to $990,874.80, and (2) the value of the missed meal and rest breaks claim from $3,963,499.20 to $1,981,749.60.

Plaintiff appears to have made these reductions to assuage this Court's concern, expressed at the first preliminary approval hearing, with the magnitude of Plaintiff's proposed discount. Arbitrary reductions to the asserted values of class claims, however, do not provide assurance that a proposed settlement fairly, reasonably, or adequately compensates bound class members. *See* Fed. R. Civ. P. 23(e)(2). There is significant reason to suspect Plaintiff's original and revised claim valuations are unsupported by credible calculations. The Court has no basis to rely on Plaintiff's calculations where Plaintiff reduced the asserted value of his security checkpoints claim by more than 80% and his missed meal and rest breaks claim by 50% without justifying these reductions. The history of this case (the Court has been given two wildly different estimates of the value of the class claims in a compressed timeline and without accompanying calculations) makes it especially important that Plaintiff explain his class claim valuations.[5]

### ii. Strengths and weaknesses of claims

Second, Plaintiff fails sufficiently to explain the strengths and weaknesses of the class claims to permit meaningful review of whether the large discount in this case is appropriate. Though Plaintiff provides Defendants' potential defenses for each claim, he does not cite case law and explain, for each claim or defense, which side has the stronger argument and is more likely to

---

[4] This figure, confusingly, was not equal to the initial sum of Plaintiff's maximum valuation of each claim, which appears to be $14,107,198.00. *See* Dkt. 28-1, at 9.

[5] In any future motion for preliminary approval, Plaintiff should provide calculations supporting its estimates of the maximum value of the class claims in its original and revised motions for preliminary approval (Dkts. 28 & 40).

prevail. *See, e.g.*, *Eddings*, 2016 WL 3390477, at *1. Plaintiff lists an asserted weakness of Madrigal's *individual case*—that some of claims arise from work performed in Iowa—as the first relevant risk to "proceeding with class certification and eventual trial on the merits." Dkt. 40, at 11. Given that Plaintiff is seeking conditional certification of a class and approval of a class settlement, he should explain the strength or weakness of each class claim.

Plaintiff, for instance, does not explain why the Class Members are not entitled to at least $1,436,000 for the wage statement class claim alone. The First Amended Complaint represents that "[n]ot one of the paystubs that Plaintiff and other class members received complied with Labor Code § 226, and contained almost none of the required information, including hours actually worked." Dkt. 40, at 96. This case might well be one where "liability is automatic or nearly so," which makes it troubling that the Gross Settlement Amount is less than one-half of what the Class Members would appear to be entitled to receive on the wage statements claim by itself. *See Hakeem v. Transdev Servs., Inc.*, No. 19-cv-2161, 2021 WL 5710107, at *1 (N.D. Cal. Dec. 2, 2021). Further, Plaintiff represents that Defendants argue they had a "legally-compliant policy for providing employees accurate itemized wage statements" but simultaneously claim that "individualized inquiries would be necessary to determine whether each employee's wage statement is deficient." Dkt. 40, at 16–17. If Defendants had a policy for ensuring their wage statements complied with the law, it is unclear why individualized assessments would nevertheless be necessary. A Gross Settlement Amount of $550,000, based on the information provided to this Court, inexplicably discounts the compensation to which the Class Members are entitled and does not meet the higher standard of review required here. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

### iii. Private Attorneys General Act (PAGA) Claims

Plaintiff estimates Defendants have a maximum exposure for potential PAGA penalties of $1,776,000. Nevertheless, Plaintiff represents Defendants planned to argue that he is an inappropriate PAGA representative because he never actually worked in California, but, rather, worked on client sites exclusively in Iowa. The parties discounted their PAGA settlement figure to

1   $45,000 on this basis. Plaintiff has represented, however, that he worked at client sites in *both*

2   California and Iowa. Dkt. 40, at 9. If this is true, then Defendants' sole argument for discounting

3   potential PAGA penalties from $1,776,600 to $45,000 would seem to be a weak one. If Plaintiff

4   worked exclusively in Iowa (potentially justifying such discounting of the PAGA claims), Plaintiff

5   would not be an appropriate class representative because he would likely not be able to sue for

6   violations of California wage and hour laws. Put simply, Plaintiff cannot have it both ways.

### 2. Extent of discovery

The limited amount of discovery completed by class counsel prior to settlement also weighs against preliminary approval. Class counsel represents it reviewed a "detailed sampling of Class Members' time and pay data," but does not appear to have interviewed a single member of the class aside from Madrigal. Dkt. 40, Decl. of Lilioukalani Martin ¶¶ 14–15 ("Martin Decl."). Class counsel suggest they took efforts to "identify potential witnesses," but appear not to have gone any further. *Id.* ¶ 14. Courts have denied preliminary approval of class settlements under such circumstances. *See, e.g.*, *Grady v. RCM Techs., Inc.*, No. 22-cv-842, 2023 WL 3327093, at *5 (C.D. Cal. May 2, 2023) (citing *Smith v. Grundfos Pumps Mfg. Corp.*, No. 21-cv-376, 2021 WL 5298863, at *10 (E.D. Cal. Nov. 15, 2021)) (collecting cases). It is unclear, for instance, how class counsel could have evaluated, solely on the basis of Class Members' time and pay data, whether (and how often) Class Members missed meal and rest breaks.

### 3. Evidence of collusion

Particularly worrisome at the preliminary approval stage is the possibility that a proposed settlement agreement is the product of collusion. Under Rule 23(e)(2), courts must "scrutinize" settlements for "evidence of collusion." *Kim v. Allison*, 8 F.4th 1170, 1179 (9th Cir. 2021) (noting three signs of collusion: (1) generous fee awards, (2) clear-sailing provisions, and (3) reversionary settlements). "[T]here is always the possibility that the defendant, class counsel, and class representatives will all pursue their own interests at the expense of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 958 n.12 (9th Cir. 2003). The proposed settlement is non-reversionary, which weighs in its favor and is evidence against collusion. *See* Dkt. 40, at 8. On the other hand,

1   Defendants agreed not to object to class counsel's requested attorney fees (a "clear-sailing
2   provision"). *See* Dkt. 40-1, at 17. The presence of such a provision heightens a district court's duty
3   to "scrutinize closely the relationship between attorneys' fees and benefit to the class." *In re*
4   *Bluetooth*, 654 F.3d at 948. Further, the requested attorney fees constitute approximately 60% of
5   the total amount to be distributed to Class Members. The existence of a clear-sailing provision and
6   the sizeable percentage of the settlement recovery allocated to attorney fees demand a more
7   searching examination of the fairness of this proposed settlement.

Courts must ensure any award of attorney fees in a class action settlement is reasonable. *See In re Online-DVD Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). At first glance, the proposed attorney fees are suspect where Plaintiff did not allege class claims at all until after settlement negotiations had begun. The benchmark percentage for attorney fees in this Circuit is 25%. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Courts may depart from this anchoring figure where the parties provide evidence of special circumstances justifying a higher award. *See In re Bluetooth*, 654 F.3d at 942. Class counsel seeks 33.3% of the settlement fund in attorney fees ($183,333.33). They justify this request by reference to their lodestar calculation of $123,750.00, which indicates a 1.46 multiplier. More information will be needed to determine whether this multiplier is warranted should this matter eventually come up for final approval. A multiplier in this case might be over-generous where "counsel achieved only limited success" to the extent the class is recovering just 7% of the asserted value of the claims. *Viceral v. Mistras Grp., Inc.*, No. 15-cv-2198, 2016 WL 5907869, at *9–10 (N.D. Cal. Oct. 11, 2016).

There are therefore at least two potential indicators of collusion present in parties' settlement agreement. The circumstances under which the proposed settlement came about, the limited class-wide discovery undertaken, and these potential indicia of collusion all weigh against preliminary approval.

**B. Adequacy of Class Representative**

The proposed settlement raises serious concerns about the adequacy of Madrigal as class representative. A class action may be certified only where a class representative "will fairly and

adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Determining whether this standard is met involves asking whether the class representative has any conflicts of interest with the class and whether the class representative will "prosecute the action vigorously on behalf of the class." *Staton*, 327 F.3d at 957.

When the parties negotiated the settlement, they agreed to settle the class claims for $550,000 and to settle Madrigal's individual claims for $50,000. Madrigal thus stands to recover $55,000 ($50,000 for his individual claims in addition to a $5,000 service award) should the proposed settlement be approved, or slightly more than 9.1% of the total amount Defendants are willing to pay to settle this case. This potential recovery serves as "de facto 'incentive pay.'" *Sandoval v. Roadlink USA Pacific, Inc.*, No. EDCV 10–00973 VAP, 2011 WL 5443777, at *6 (C.D. Cal. Oct. 9, 2011) (finding adequacy problem where class representatives received much *lower* percentage of gross settlement amount to settle their individual claims); *see also Wilson v. Conair Corp.*, No. 1:14-00894 WBS, 2016 WL 7742772, at *4 (E.D. Cal. June 3, 2016) (holding plaintiff inadequate class representative based on unique individual claims).

Madrigal's incentive, during settlement negotiations, would have been to allocate as much of the $600,000 Defendants appear to have been willing to pay to settle this case to himself as compensation for his individual claims. *See Hawkins v. Securtest Inc.*, No. 18-cv-7344, 2023 WL 8439335 (N.D. Cal. Nov. 29, 2023). Madrigal does not engage with the question of how these incentives might affect his ability to serve as an adequate class representative in his motion for preliminary approval.[6] There is significant reason to doubt Madrigal is an adequate representative of the 359 Settlement Class Members. Plaintiff, in his original motion for preliminary approval, included the $50,000 Defendants allocated to settle his individual claims in the gross settlement amount. *See* Dkt. 28, at 8. In the revised motion, Plaintiff represents that "the parties agreed to separately resolve Plaintiff's individual retaliation and wrongful termination claims via a separate

---

[6] That said, it is difficult to contemplate what explanation Madrigal could give to alleviate the conflict of interest his individual recovery creates with the rest of the class.

settlement agreement." Dkt. 40, at 8. For purposes of assessing Plaintiff's adequacy as class representative, this is a distinction without a difference. Defendants had no stake in how the $600,000 they were willing to pay to settle both Plaintiff's individual claims and the class claims would be divided. In both the original and revised motions for preliminary approval, Defendants were willing to pay $50,000 to settle Plaintiff's individual claims and $550,000 to resolve the class claims. Madrigal does not appear to be an adequate class representative.

### C. Other Issues

There are additional issues with the proposed settlement. Without providing an exhaustive list, it is worth noting, for instance, that the parties have not created a website to keep Class Members apprised of key deadlines and provide access to important case documents. *See* Procedural Guidance for Class Action Settlements (Aug. 4, 2022). Plaintiffs also claim notice under the Class Action Fairness Act is unnecessary but cite no authority for the proposition that parties seeking preliminary approval of a class action settlement need not provide such notice where an action is removed to federal court pursuant to diversity jurisdiction.

## V. CONCLUSION

Plaintiff's motion for preliminary approval of the class settlement is denied without prejudice. The Court defers ruling on preliminary class certification until such a time as Plaintiff submits a revised motion that merits preliminary approval. A further case management conference will be set for January 18, 2024.

**IT IS SO ORDERED**.

Dated: January 3, 2024

_____
RICHARD SEEBORG
Chief United States District Judge